# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00126-CV

**Greg Abbott in his Official Capacity as Governor of the State of Texas, Stephanie Muth in her Official Capacity of Commissioner of the Department of Family and Protective Services, and the Texas Department of Family and Protective Services, Appellants**

**v.**

**Jane Doe, individually and as parent and next friend of Mary Doe, a minor; John Doe, individually and as parent and next friend of Mary Doe, a minor; and Dr. Megan Mooney, Appellees**

### FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-22-000977, THE HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## O P I N I O N

This appeal arose after Appellees—the married parents of a transgender adolescent diagnosed with gender dysphoria and a psychologist who treats transgender children—filed suit to enjoin the appellants from initiating child abuse investigations based upon appellants' announcement that providing gender-affirming medical care to minors constitutes child abuse.

Appellants Greg Abbott, in his official capacity as the Governor of the State of Texas; Stephanie Muth, in her official capacity as the Commissioner of the Texas Department of Family and Protective Services; and the Texas Department of Family and Protective Services (collectively, State Appellants) challenge the trial court's denial of their plea to the jurisdiction in

this interlocutory appeal.[1]  The State Appellants also challenge the trial court's grant of a temporary injunction prohibiting the Department from implementing or enforcing an allegedly invalid rule that expanded the definition of "child abuse" and mandated child abuse investigations into every report that an adolescent was receiving gender-affirming medical care.[2]

We affirm the part of the trial court's order denying the plea to the jurisdiction as to all claims asserted against the Department and the Commissioner and affirm the part of the order granting a temporary injunction against the Department and the Commissioner.  We reverse the part of the order denying the plea to the jurisdiction as to all claims asserted against the Governor and render judgment dismissing all claims against the Governor.  We vacate the part of the trial court's order granting a temporary injunction against the Governor.

## BACKGROUND

On February 18, 2022, the Attorney General released an opinion that concludes that performing certain medical procedures and providing certain drugs to children diagnosed with gender dysphoria "can legally constitute child abuse under several provisions of chapter 261 of the Texas Family Code."[3]  *See* Tex. Att'y Gen. Op. No. KP-0401 (2022), 2022 WL 579379, at *1.  The

---

[1]  When this appeal was filed the appellants were Jamie Masters, in her official capacity as Commissioner of the Texas Department of Family and Protective Services, the Department, and the Governor.  Effective January 2, 2023, Stephanie Muth became the Department's Commissioner.  We have substituted Commissioner Muth as an appellant in this appeal.  *See* Tex. R. App. P. 7.2 (requiring that "public officer's successor is automatically substituted as a party if appropriate" when public officer is party in official capacity to appeal and ceases to hold office while appeal is pending).

[2]  In this opinion, "gender-affirming medical care" refers to the use of puberty blockers and hormone therapy for the treatment of diagnosed gender dysphoria.

[3]  In her sworn declaration submitted with the petition, Appellee Dr. Megan Mooney attests that, according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5), gender dysphoria is the diagnostic term for the condition experienced by some transgender people resulting from the lack of congruence between their

Attorney General's opinion states that puberty-blocking medications and hormone therapy used to treat gender dysphoria are not medically necessary and violate the child's constitutional right to procreate. *Id.* at \*4–6, 9. The Attorney General's opinion explained that it "does not address or apply to medically necessary procedures." *Id.* at \*1.

On February 22, 2022, the Governor sent a letter (Governor's Directive) to the Commissioner, enclosing the Attorney General's opinion and stating that the opinion "makes clear" that the "administration of puberty-blocking drugs or supraphysiologic doses of testosterone or estrogen" constitutes child abuse under Texas Family Code Section 261.001(A)–(D). The Governor directed the Department to "follow the law as explained in" the Attorney General's opinion and "conduct a prompt and thorough investigation of *any* reported instances of these abusive procedures in the State of Texas," without regard for medical necessity. (Emphasis added). The Governor announced that "Texas law also imposes a duty on [the Department] to investigate the parents of a child who is subject to these abusive gender-transitioning procedures[.]" The Governor also emphasized that "Texas law imposes reporting requirements upon all licensed professionals who have direct contact with children" "and provides criminal penalties for failure to report such child abuse." Lastly, the Governor instructed that members of the general public are subject to similar reporting requirements and criminal penalties.

That same day, the Department issued the following statement to the media:

---

gender identity and the sex assigned to them at birth. *See* American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* at 451–53 (5th ed. 2013). Dr. Mooney attests that to be diagnosed with gender dysphoria, the patient must experience the incongruence between gender identity and assigned sex for at least six months accompanied by clinically significant distress or impairment in social or other important areas of functioning. *See id.* (explaining that gender dysphoria in children is defined as marked incongruence between one's experienced/expressed gender and assigned gender, lasting at least six months, manifested by at least six of eight listed criteria).

3

> In accordance with Governor Abbott's directive today to Commissioner Masters, we will follow Texas law as explained in Attorney General opinion KP-0401.
>
> At this time, there are no pending investigations of child abuse involving the procedures described in that opinion. If any such allegations are reported to us, they will be investigated under existing policies of Child Protective Investigations.

Texas Dept. of Family & Protective Servs., Statement on Governor's Letter/AG Opinion (Feb. 22, 2022) (Department Statement).[4] When the Department issued the statement on February 22, 2022, there were no pending child abuse investigations based on allegations of the procedures described in the Attorney General's opinion.

Appellees Jane and John Doe (Doe Parents) are the married parents of Mary Doe, a then-16-year-old adolescent diagnosed with gender dysphoria and prescribed gender-affirming medical care.[5] Appellees allege in their petition that, as a Department employee, Jane Doe asked her supervisor on February 23, 2022, about the impact of the Attorney General's opinion and the Governor's Directive on Department policy. Within hours of her inquiry, the Department placed Jane on paid administrative leave because she has a transgender daughter who is prescribed gender-affirming medical care.[6] The following day a Department investigator informed Jane that

---

[4] We refer to the Department's February 22, 2022 statement and subsequent implementation of policies related to its expanded definition of "child abuse" as the "Department Statement," and we analyze Appellees' argument that the Department Statement announced a new rule implementing the Governor's Directive and the Department subsequently adopted procedures implementing that new rule without following the rulemaking procedures of the Administrative Procedures Act. Our references to the Department Statement refer to what the trial court referred to as the DFPS rule enforcing the Governor's Directive.

[5] All Appellees except Dr. Mooney are proceeding under pseudonyms to protect their privacy. *See* Tex. R. Civ. P. 21c(a)(3), (b); Tex. R. App. P. 9.9(a)(3), (b); *cf.* Tex. R. App. P. 9.8 (requiring identification of minors by aliases in parental-rights termination cases).

[6] The State Appellants represent that the Department placed Jane on administrative leave for the duration of its child abuse investigation.

she and John were being investigated for child abuse in accordance with the Governor's Directive because Mary was receiving gender-affirming medical care. A Department investigator subsequently visited the Does' home and conducted separate interviews of the Doe Parents and Mary in the presence of each party's counsel.

Shortly thereafter, the Doe Parents and Dr. Mooney, a Texas-licensed clinical psychologist who treats transgender adolescents, sued the State Appellants. In their petition, Appellees assert (1) that the Department Statement promulgates a new rule and the rule is invalid under the Administrative Procedure Act ("APA"), Tex. Gov't Code Ch. 2001; *see also id.* § 2001.038(a); (2) claims that the Governor and the Commissioner engaged in ultra vires conduct; (3) that the Commissioner and the Governor violated the separation of powers established by Article II of the Texas Constitution, *see* Tex. Const. art. II, § 1; (4) that the Governor's Directive and new rule promulgated in the Department Statement are unconstitutionally vague, *see* Tex. Const. art. I, § 19; (5) that the Commissioner and the Governor are depriving the Doe Parents of their fundamental right to care for Mary and provide Mary with prescribed medical treatment that is available and accepted in the medical community; and (6) that the Commissioner and the Governor are interfering with Mary's rights to equal protection under law and equality under the law, *see* Tex. Const. art. I, §§ 3, 3a.[7] Appellees also sought a temporary injunction restraining the State Appellants with respect to Appellees' APA rulemaking, ultra vires, and separation of powers claims, and permanent injunctive relief prohibiting the State Appellants from enforcing the Governor's Directive and the Department Statement. After the State Appellants filed a plea to the

---

[7] Appellees submitted declarations from Jane and Dr. Mooney with their petition.

5

jurisdiction and response to Appellees' application for temporary injunction, the trial court conducted an evidentiary hearing.[8]

*Trial Court Evidentiary Hearing*

Appellees first called Department Investigator Supervisor Randa Mulanax, who testified that after an investigation opens, the Department communicates with parents via telephone, email, and text, and conducts in-person interviews with the child. Mulanax explained that shortly after the Department Statement, upper management conducted a virtual leadership meeting. During that meeting, the Department provided special instructions for gender-affirming medical care cases that included not to record anything about the cases in emails or text messages and not to write anything specific in an email that could be pulled by media. Mulanax stated that this was the first time in her six years of working for the Department that she was instructed not to put information about a case in writing. She was also instructed that for gender-affirming medical care cases, an investigation must be initiated and a disposition must be assigned.

Mulanax testified that she was further instructed by management that, unlike other cases in the Department, investigators were not permitted to designate gender-affirming medical care cases as "priority none," and the cases were not eligible for "alternative response." Mulanax explained that the only other cases investigators were not permitted to "priority none" were child death cases and cases with an open conservatorship. Mulanax described that a "priority none" designation means either that the investigator has gathered credible information demonstrating that it is not likely the child is being abused or neglected or will be abused or neglected in the future, the allegation is not within the authority of the Department to investigate, or that the allegation has

---

[8] Appellees called three fact witnesses and two expert witnesses at the evidentiary hearing. The State Appellants did not call live witnesses during the hearing.

6

already been investigated. In the Department's priority scale for cases, "priority one" means that there is imminent danger, and the Department must respond within twenty-four hours to ensure child safety. "Priority two" means there are concerns for abuse or neglect but no imminent danger, and the Department needs to assess ongoing safety. Mulanax testified that "alternative response" involves holding meetings with the family and no disposition is assigned at the end of the case. She also testified that cases can be closed after collateral calls are made at the intake stage if it does not appear that the case needs to be investigated as child abuse. Mulanax stated that before February 22, 2022, she was not aware of any gender-affirming medical care cases within the Department but that she was aware of seven in the state currently. Mulanax recently resigned from her position because she did not believe that the Department Statement was ethical or in the best interests of children and families. She would soon finish her term of employment with the Department.

Jane testified that several Department employees had known for at least a year that Mary was prescribed gender-affirming medical care. Jane had never been investigated by the Department until the day after the Department Statement was issued. Jane testified that, just before the Governor's Directive was issued, she confirmed with her supervisor that gender-affirming medical care was deemed "CNR" or "clearly not reportable," meaning it was not investigated.

Jane testified that after she was placed on leave, a Department investigator telephoned to inform her that he would be coming to her home. Jane stated that Mary found out about the Governor's Directive at school. After reading an article, Mary became very afraid that she would be taken from her family. Jane testified that by the time Mary returned from school that day, her daughter's life looked very different. The following day, an investigator conducted an in-home interview with Jane and John and their attorney, and Mary was interviewed separately with

7

her attorney. Jane stated that Mary was terrified during the interview and was forming a contingency plan in case she was taken from her parents.

Jane testified that Mary was an honor-roll student, but that after the investigation Mary no longer wanted to go to school, was anxious, and required more counseling. Jane stated that Mary thinks the investigation is her fault and that she did something wrong. Jane and John are contemplating leaving Texas because the family lives in fear. Jane testified that she sought medical advice about whether Mary required gender-affirming medical care and followed medical directives. The family consulted with medical professionals and it was not a decision that Jane took lightly.

Jane asserted her rights under the Fifth Amendment when counsel for the State Appellants asked on cross-examination if Mary was on medication to treat gender dysphoria when the Department placed Jane on administrative leave. After counsel for the State Appellants objected, the following exchange occurred:

> TRIAL COURT:     Is—is your position that the [Department] will not seek any criminal investigation into any parents?
>
> DEPARTMENT COUNSEL: Your Honor, I can't forecast what the [Department] will ever do in regards to this Plaintiff on any—any report of child abuse.
>
> TRIAL COURT:     Right. And since you can't guarantee that, I think I have to honor her pleading of the Fifth, if that's what she has decided to do with her counsel.
>
> DEPARTMENT COUNSEL: Well, Your Honor, [Department] investigations are not criminal investigations. They're civil investigations.
>
> TRIAL COURT:     Right. But you just said you can't tell me that the [Department] or the State and any of its other agencies or any sort of DA won't investigate a parent criminally for the same behavior. And so if she is going to plead the Fifth, the Court will honor that pleading of the Fifth.

8

Later during cross-examination, Jane answered questions that counsel for the State Appellants posed concerning when Mary informed Jane that she was transgender, what doctor diagnosed Mary with gender dysphoria, and whether Mary saw a therapist or psychiatrist. Counsel also asked Jane to describe the specific research that she performed on the medications that doctors prescribed to treat Mary's gender dysphoria, including providing the titles and authors of studies and articles that Jane read. Jane answered that she "read everything [she] could find."

Appellee Dr. Mooney testified that as a psychologist, she serves families and children, with a subspeciality in serving LGBTQ+ youth who are disproportionately impacted by trauma. Dr. Mooney is a member of the Texas and American Psychological Associations, both of which publicly support gender-affirming medical care. Dr. Mooney diagnoses clients with gender dysphoria and makes medical referrals for those clients. She testified that she has seen through her practice, and research substantiates, the significant positive mental-health benefits of gender-affirming medical care for adolescents with gender dysphoria. She stated that psychological and medical treatments for gender dysphoria are effective and bring clients relief.

Dr. Mooney testified that the Governor's Directive and the Department Statement, requiring her to report clients and their families for child abuse solely for receiving gender-affirming medical care, went against medical research and the ethical standards and guidelines of her national professional association. She emphasized that the Department Statement and the Governor's Directive made no exception for medical necessity and did not reference medical or scientific standards. She explained that because the therapeutic relationship is founded upon confidentiality, reporting her clients for receiving medical care would harm her business and could result in the loss of her professional license.

9

Dr. Mooney testified that the Governor's Directive was sent to Texas' psychologist-licensing board, specifically the director of the Behavior Health Executive Council, who has enforcement authority over her professional license. As a mandatory reporter, if Dr. Mooney does not report what is found to be abuse under Texas law, she may face civil and criminal ramifications and loss of her professional license and her practice. After filing this lawsuit, Dr. Mooney received an email that threatened her license directly and accused her of being a child abuser.[9]

Dr. Mooney testified that, as a mental-health professional working with LGBTQ+ youth, she personally has seen increased risk of suicidality and depression among transgender adolescents in response to the Department Statement. She stated that research in reaction to similar rules shows similar impacts on the mental health and well-being of the transgender youth population.

Dr. Armand Antommaria, whom the trial court admitted as an expert in medical ethics and the treatment protocols for adolescents with gender dysphoria, testified that gender-affirming medical care is safe, effective, and necessary for the treatment of the serious medical condition of gender dysphoria.[10] He stated that providing gender-affirming medical care does not constitute child abuse, and characterizing it as such puts healthcare providers in the untenable position of either violating their professional obligations or the law and causes serious harm to patients and their families. He explained that observational studies demonstrated that

---

[9] Dr. Mooney did not specify who sent this communication.

[10] Dr. Antommaria serves as the director of the Ethics Center at the Cincinnati Children's Hospital Medical Center, the Lee Ault Carter Chair in Pediatric Ethics, an attending physician in the division of hospital medicine at Cincinnati Children's Hospital Medical Center, and professor of pediatrics and surgery at the University of Cincinnati College of Medicine. He was involved in establishing the Transgender Clinic at Cincinnati Children's Hospital, and he has published articles in peer-reviewed literature related to the ethical issues and care of transgender adolescents.

pubertal suppression improved general functioning and decreased depression among people with gender dysphoria, and hormone therapy showed improvements in mental-health outcomes. Adolescents who do not receive medically indicated treatment for gender dysphoria are at a higher risk for depression, anxiety, self-harm, suicidality, and eating disorders.

On cross-examination, Dr. Antommaria stated that any risk of possible side effects of hormone therapy is outweighed by the potential benefits of the treatment, and he clarified that all medical treatments entail risk. He explained that puberty blockers are provided to adolescents for conditions other than gender dysphoria.

Dr. Cassandra Brady, whom the trial court admitted as an expert on the provision, protocols, and treatment of care regarding gender dysphoria, provides puberty-blocking agents and gender-affirming hormones for gender-dysphoric adolescents.[11] She testified that data demonstrates that puberty blockers are reversible, safe, and effective, and that the use of gender-affirming hormones is also safe. Dr. Brady stated that significant harm would result if safe and effective medically necessary treatments for gender dysphoria in adolescents are withheld, including mental-health comorbidities and potentially death. She testified that withholding or pausing gender-affirming medical care for an adolescent with gender dysphoria can cause significant mental-health distress, increased anxiety, and suicide, all of which equates to an increased risk for death.

---

[11] Dr. Brady is board-certified in general pediatrics and pediatric endocrinology. She serves as an assistant professor of general pediatrics in the division of endocrinology at Vanderbilt Children's Hospital and is the clinic director for the Differences of Sex Development Clinic and the Gender Diverse Clinic for Transgender Adolescents with Gender Dysphoria. She has published a peer-reviewed article on the subject of gender dysphoria, and she is a member of the American Academy of Pediatrics, the Pediatric Endocrine Society, the Endocrine Society for Professional Association of Transgender Health, and the World Professional Association for Transgender Health (WPATH).

The trial court signed an order granting Appellees' application for temporary injunction and denying the State Appellants' plea to the jurisdiction. The temporary injunction enjoins the State Appellants from:

> (1) taking any actions against Plaintiffs based on the Governor's directive and [Department] rule, both issued February 22, 2022, as well as Attorney General Paxton's Opinion No. KP-0401 which they reference and incorporate; (2) investigating reports in the State of Texas against any and all persons based solely on alleged child abuse by persons, providers or organizations in facilitating or providing gender-affirming care to transgender minors where the only grounds for the purported abuse or neglect are either the facilitation or provision of gender-affirming medical treatment or the fact that the minors are transgender, gender transitioning, or receiving or being prescribed gender-affirming medical treatment; (3) prosecuting or referring for prosecution such reports; and (4) imposing reporting requirements on persons in the State of Texas who are aware of others who facilitate or provide gender-affirming care to transgender minors solely based on the fact that the minors are transgender, gender transitioning, or receiving or being prescribed gender-affirming medical treatment.

The trial court also found in the order that "gender-affirming care was not investigated as child abuse by [the Department] until after February 22, 2022." The trial court further found that the Department rule "changed the *status quo* for transgender children and their families, as well as professionals who offer treatment, throughout the State of Texas" because "[t]he Governor's directive was given the effect of a new law or new agency rule, despite no new legislation, regulation or even stated agency policy." By concluding that Appellees stated a valid cause of action against each State Appellant and demonstrated a probable right to the declaratory and injunctive relief sought, the trial court necessarily also concluded that it has subject-matter jurisdiction over Appellees' claims. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993) (explaining that subject-matter jurisdiction is essential to authority of court to decide case).

12

The State Appellants took this interlocutory appeal, which automatically superseded the trial court's temporary injunction. *See* Tex. R. App. P. 29.1(b); Tex. Civ. Prac. & Rem. Code § 6.001(b). We issued a Rule 29.3 temporary order that reinstated the temporary injunction during the pendency of the interlocutory appeal. *See* Tex. R. App. P. 29.3; *Abbott v. Doe*, No. 03-22-00126-CV, 2022 WL 837956, at *1 (Tex. App.—Austin Mar. 21, 2022, order) (per curiam), *mand. granted in part and denied in part sub nom. In re Abbott*, 645 S.W.3d 276, 284 (Tex. 2022) (orig. proceeding). The State Appellants petitioned the Texas Supreme Court for a writ of mandamus directing us to vacate the Rule 29.3 order. *See In re Abbott*, 645 S.W.3d at 280.

The Texas Supreme Court unanimously held that mandamus relief was appropriate as to the Rule 29.3 order's application to "any and all" nonparties because Rule 29.3 provides authority to appellate courts to preserve only the parties' rights until disposition of the appeal. *Id.* at 283. The high court also instructed us to vacate the injunction against the Governor because there was no allegation in the record that the Governor was taking or had the authority to take the enforcement action the order enjoined. *Id.* at 283–84. The Supreme Court otherwise denied mandamus relief from the order's application insofar as it governed the conduct among the parties on appeal. *Id.* at 283.

## ANALYSIS

In their first three issues on appeal, the State Appellants argue that the trial court lacked jurisdiction because (1) Appellees' claims are not ripe, (2) Appellees lack standing to sue, and (3) sovereign immunity bars Appellees' claims.[12] In their next four issues, the State Appellants challenge the trial court's grant of the temporary injunction, arguing that (4) the first provision is

---

[12] Although the State Appellants' brief identifies four "issues presented," the body of the brief contains additional issues. For clarity, we construe the issues as eight.

invalid because the Department can investigate gender-affirming medical care independent of the Governor's Directive; (5) the second provision is invalid because the Department interprets the definition of "child abuse" in carrying out its duty to investigate; (6) the second through fourth provisions improperly grant statewide relief; (7) the third and fourth provisions do not enjoin the proper parties; and (8) Appellees did not show irreparable harm that could be remedied by a temporary injunction.[13] We first address the State Appellants' jurisdictional issues and then turn to their issues challenging the temporary injunction.

**State Appellants' Issues Challenging the Denial of Their Plea to the Jurisdiction**

A plea to the jurisdiction is a dilatory plea that challenges the trial court's subject-matter jurisdiction without regard to whether the asserted claims have merit. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Because subject-matter jurisdiction is a question of law, we review a trial court's ruling on a plea to the jurisdiction de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When a plea challenges the sufficiency of the plaintiff's pleadings, we begin by analyzing the plaintiff's live pleadings to determine whether the plaintiff has met the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.* (citing *Texas Ass'n of Bus.,* 852 S.W.2d at 446). We construe pleadings liberally, taking them as true, and look to the pleader's intent. *Id.*; *see also Texas Logos, L.P. v. Brinkmeyer*, 254 S.W.3d 644, 659 (Tex. App.—Austin 2008, no pet.). Mere unsupported legal conclusions are insufficient. *See Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Env't Quality*, 307 S.W.3d 505, 515 & nn.7 & 8 (Tex. App.—Austin 2010, no pet.). If the pleadings

---

[13] Appellees no longer seek injunctive relief against the Governor and defend the temporary injunction only as it applies to the Department and the Commissioner.

fail to allege sufficient facts to affirmatively demonstrate the trial court's jurisdiction but also fail to affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d at 226–27. If, however, the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without permitting a plaintiff an opportunity to amend. *Id.* at 227.

Where a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Id.* (citing *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555). Where the jurisdictional challenge implicates the merits and the plea to the jurisdiction includes evidence, as in this case, the trial court reviews the relevant evidence to determine if a fact issue exists. *Id*. In doing so, courts take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* at 228; *see also University of Tex. v. Poindexter*, 306 S.W.3d 798, 806–07 (Tex. App.—Austin 2009, no pet.) (explaining applicable standards of review depending upon whether determination of jurisdictional issue implicates merits). If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction and the fact issue is resolved by the factfinder at trial. *Miranda*, 133 S.W.3d at 227–28. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228; *see also Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012) (instructing that "we must grant the plea if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction").

"Sovereign immunity protects the State of Texas and its agencies and subdivisions from suit and from liability." *Matzen v. McLane*, 659 S.W.3d 381, 387–88 (Tex. 2021) (citing *PHI,*

15

*Inc. v. Texas Juv. Just. Dep't*, 593 S.W.3d 296, 301 (Tex. 2019)). "Because the assertion of sovereign immunity implicates the court's jurisdiction, immunity is properly raised in a plea to the jurisdiction." *Id.* at 388 (citing *Houston Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016)). To defeat a plea to the jurisdiction, a plaintiff suing a state agency or a state official must affirmatively demonstrate in its pleadings that sovereign immunity has been waived or does not apply. *Miranda*, 133 S.W.3d at 226. Sovereign immunity does not shield the state from ultra vires claims seeking to prevent government officials from exceeding their statutory or constitutional authority. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009).

### Issue 1: Ripeness

In their first issue, the State Appellants argue that Appellees' claims are not ripe.[14] For a court to have subject-matter jurisdiction, the claims must be ripe. *Southwest Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020). "While standing focuses on the issue of who may bring an action, ripeness focuses on when that action may be brought." *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000). "At the time a lawsuit is filed, ripeness asks whether the facts have developed sufficiently so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998). A claim is not required to be ripe at the time of filing, but a plaintiff must demonstrate a reasonable likelihood that the claim will soon ripen. *Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011) (citing *Perry v. Del Rio*, 66 S.W.3d 239, 251 (Tex. 2001) (explaining that claim may ripen while on appeal)).

---

[14] The State Appellants argue that Appellees' claims generally are not ripe and do not assess any specific claim as unripe.

16

The State Appellants argue that Appellees' claims based on an allegedly improper investigation lack ripeness. In the alternative, the State Appellants contend that Appellees' claims are not ripe because the Department is investigating to determine if child abuse occurred. The State Appellants' ripeness challenge, however, relies upon a mischaracterization of Appellees' claims. The Appellees are not complaining about the outcome of investigations against them; they are complaining that the Department Statement is an invalid rule under the APA which impairs their constitutional rights and that the Commissioner acted ultra vires by implementing the Governor's Directive. As discussed below, these are purely legal inquiries that do not require the determination of factual matters that have not been sufficiently developed. *See City of Waco v. Texas Natural Res. Conservation Comm'n*, 83 S.W.3d 169, 176–77 (Tex. App.—Austin 2002, pet. denied) (concluding that UDJA claim that agency acted beyond statutory authority presented purely legal inquiry that would not benefit from development of additional facts in connection with permit application). It is not necessary for the Department to reach a final agency determination concerning whether the Doe Parents committed child abuse for the trial court to have jurisdiction over Appellees' claim that the Department Statement is an invalid rule under the APA. Likewise, the trial court need not consider the outcome of the Department's investigation to have subject-matter jurisdiction over Appellees' claim that the Commissioner acted ultra vires by implementing the Governor's Directive that was issued without authority. Subject-matter jurisdiction over Appellees' claims and requested declaratory and injunctive relief does not require a determination of facts in the context of any Department investigation.

*Ripeness of APA Rulemaking Claims*

In response to the State Appellants' ripeness argument, Appellees contend that their declaratory-judgment claims challenging the new rule promulgated in the Department Statement

17

as invalid under the APA are ripe. *See* Tex. Gov't Code § 2001.038. Section 2001.038 provides as follows:

> The validity or applicability of a rule, including an emergency rule adopted under Section 2001.034, may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff.

*Id.* § 2001.038(a). "An agency rule is invalid if (1) the agency had no statutory authority to promulgate it; (2) it was not promulgated pursuant to proper procedure; or (3) it is unconstitutional." *Williams v. Texas State Bd. of Orthotics & Prosthetics*, 150 S.W.3d 563, 568 (Tex. App.—Austin 2004, no pet.) (quoting *Railroad Comm'n v. ARCO Oil & Gas Co.*, 876 S.W.2d 473, 477 (Tex. App.—Austin 1994, writ. denied), *superseded by statute on other grounds as stated in Lower Laguna Madre Found., Inc. v. Texas Nat. Res. Conservation Comm'n*, 4 S.W.3d 419, 425 (Tex. App.—Austin 1999, no pet.)).

Appellees allege that they presented a ripe, justiciable controversy because the Department has established a firm position in its statement and the statement's implementation and Appellees established imminent injuries. In their petition, Appellees allege that the Department Statement constitutes a "rule" under the APA and the Commissioner promulgated the purportedly invalid rule without following the mandatory rulemaking provisions of the APA. *See id.* §§ 2001.023, .029, .033 (requiring public notice, comment, and reasoned justification for rulemaking). Appellees also allege that the Department Statement is a facially invalid rule because it conflicts with the Department's enabling statute that specifies that the Department "shall . . . provide family support and family preservation services that respect the fundamental right of parents to control the education and upbringing of their children." *See* Tex. Hum. Res. Code § 40.002. They further allege that the rule is unconstitutional for several reasons, and accordingly,

18

the purportedly invalid rule impairs their constitutional rights. We address each of their constitutional allegations below.

Appellees contend that the implementation or threatened application of the Department Statement as an invalid rule interferes with or or threatens to interfere with the Doe Parents' and Dr. Mooney's rights to due process because the invalid rule is unconstitutionally vague and leaves them uncertain about how to act to avoid criminal and civil penalties. The Department Statement requires an investigation into every allegation that a minor is receiving any treatment for gender dysphoria without an exception for a parent's reliance on a doctor for medically accepted treatment. *See* Tex. Const. art. I, § 19; *In re Abbott*, 645 S.W.3d at 287 n.3 (Lehrmann, J., concurring). However, Appellees presented evidence that Mary has been diagnosed with gender dysphoria and prescribed a medically accepted course of treatment that, if discontinued, places her at a higher risk for self-harm, depression, and suicidality. Based on this evidence, the Doe Parents contend that if they refuse to provide Mary with gender-affirming medical care to treat her diagnosed gender dysphoria, they risk a Department investigation for neglect. *See* Tex. Fam. Code § 261.001(4)(A)(ii)(b) (defining neglect to include failing to seek, obtain, or follow through with medical care for child resulting in observable and material impairment to growth, development, or functioning). In addition, Dr. Mooney testified that she must choose between the possibility of criminal prosecution for failing to report her clients for receiving medical care or comply with the Department Statement and report her clients, which would harm her business, violate her ethical and professional principles, and potentially expose her to civil lawsuits. *See Patel v. Texas Dep't of Licensing & Regul.*, 469 S.W.3d 69, 78 (Tex. 2015) (concluding that claims were ripe when plaintiffs were subject to real threat of likely civil

and criminal proceedings and administrative proceedings); *see* also Tex. Fam. Code § 261.109 (a-1) (providing that professional who fails to make report of suspected child abuse commits offense).

Appellees also contend that the Commissioner's action in promulgating the unconstitutionally vague rule violated separation of powers. *See id*. art. II, § 1. Appellees argue that the implementation or threatened application of the Department Statement as an invalid rule interferes with or threatens to interfere with the Doe Parents' fundamental right to direct Mary's care and provide prescribed medical treatment that is accepted and available in the medical community, along with other due-process guarantees of the Texas Constitution. *See Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985) (characterizing natural parental right as essential, basic civil right). Appellees contend that the Department policy of mandatory investigations requires the Doe Parents to choose between providing Mary with the gender-affirming medical care prescribed by her doctor and subjecting themselves to investigation and possible family separation, or to stop the prescribed treatment and risk irreparable physical and emotional harm to Mary. Appellees presented evidence demonstrating that the allegedly invalid Department Statement has caused the Doe Family significant stress and fear. Jane and John are considering out-of-state relocation where they can access Mary's prescribed gender-affirming medical care to treat her diagnosed gender dysphoria. The Department Statement caused Mary such great anxiety that she required counseling. The allegedly invalid rule also harmed Mary's performance in school and caused her to plan for a future when she may be removed from her family.

Finally, Appellees maintain that the implementation or threatened application of the Department Statement as an invalid rule interferes with or threatens to interfere with the guarantee of equality under law because the rule targets the provision of hormone therapy and puberty blockers to transgender adolescents for the treatment of gender dysphoria as "child abuse" but does

not require investigation when cisgender youth are prescribed those treatments for other reasons. *See id*. art. I, §§ 3, 3a. Appellees presented evidence that the allegedly invalid rule prevents Mary from assessing prescribed medical treatment based solely on her identity as a transgender adolescent. Appellees also presented evidence that the Department requires investigations into every report that a minor receives gender-affirming medical care, and the Department treats those investigations differently from all other child abuse investigations. Department investigators are not permitted to assign gender-affirming medical care cases "priority none" or "alternative response," they are restricted about what information they can record, and every investigation requires a disposition.

Appellees do not need to wait for the Department to make an initial or final determination as to whether the Doe Parents engaged in child abuse for the trial court to have jurisdiction to consider whether the Department Statement constitutes an invalid rule under the APA and to grant injunctive relief based on that claim. "[T]he purpose of [Texas Government Code] section 2001.038 . . . 'is to obtain a final declaration of a rule's validity *before* the rule is applied.'" *Texas Dep't of Pub. Safety v. Salazar*, 304 S.W.3d 896, 903 (Tex. App.—Austin 2009, no pet.) (emphasis in original) (quoting *Rutherford Oil Corp. v. General Land Off.*, 776 S.W.2d 232, 235 (Tex. App.—Austin 1989, no writ)). The Department has applied the challenged rule and is investigating the Doe Parents for child abuse. The Department also placed Jane on administrative leave from her position. *See Patel*, 469 S.W.3d at 78 (discussing ripeness and holding that plaintiffs who had not faced administrative enforcement could proceed because threat of harm was more than conjectural or remote). The Department has announced that it will investigate all parents that are reported to provide gender-affirming medical care to their minor children. Appellees complain that the Department and the Commissioner promulgated an invalid rule and have

21

presented evidence demonstrating that the Department is enforcing that rule and conducting investigations based upon that rule. We thus conclude that Appellees have shown that "the facts have developed sufficiently so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Patterson*, 971 S.W.2d at 442. On this record we conclude that Appellees have presented APA rulemaking claims that are ripe for court review.

*Ripeness of Ultra Vires Claims*

Appellees also contend that their ultra vires claims are ripe and do not require further factual development for resolution.[15] Appellees assert that the Commissioner acted ultra vires in promulgating the Department Statement without following the mandatory rulemaking provisions of the APA. They allege that the Commissioner also improperly implemented the Governor's Directive and required the Department to investigate reports of transgender adolescents receiving gender-affirming medical care. Appellees assert that the Commissioner violated the separation-of-powers provision of the Texas Constitution by adopting and enforcing an enlarged definition of "child abuse" without delegation from the state legislature. *See* Tex. Const. art. II, § 1. They contend that this enlarged definition resulted in a vague and overbroad statute that fails to provide Appellees with notice of their reporting obligations or how to act to avoid civil and criminal penalties. Finally, Appellees allege that the Commissioner's enforcement of the Department Statement violates Mary's right to equal protection because the Commissioner enacted a policy that requires investigation into every report that an adolescent is receiving gender-affirming medical care and treats those investigations differently from all others. *See id.*

---

[15] Because we ultimately conclude that Appellees do not have standing to sue the Governor, we do not address the ripeness of their ultra vires and constitutional claims against him. *See* Tex. R. App. P. 47.1.

22

art. I, §§ 3, 3a. They contend that Mary faces the potential loss of prescribed gender-affirming medical care which could cause depression and suicidality if discontinued.

Appellees allege, and the record supports, that the Department Statement has resulted in imminent and irreparable injuries including (i) Jane's placement on administrative leave from employment; (ii) Mary facing the potential loss of medical care that can cause depression and suicidality if discontinued; (iii) Dr. Mooney facing civil suits for failing to treat her patients in accordance with professional standards and the potential loss of her professional license for failing to follow her professional ethics; and (iv) Dr. Mooney facing criminal prosecution for failing to comply with the Department Statement if she does not report her patients for receiving gender-affirming medical care.

We conclude that the pleadings and evidence demonstrate that Appellees' ultra vires claims are ripe for court review. Appellees assert a legal challenge to the Commissioner's actions that does not require a final agency determination. Appellees presented evidence of imminent harm and likely injury from the challenged actions, and they seek prospective injunctive relief from those actions. Because the facts have sufficiently developed "so that an injury has occurred or is likely to occur, rather than being contingent or remote," Appellees' ultra vires claims are ripe. *Patterson*, 971 S.W.2d at 442.

*Ripeness of Constitutional Claims*

Appellees also assert constitutional claims that the Commissioner's actions violate the separation-of-powers doctrine by adopting and enforcing an overbroad definition of "child abuse" and interfering with the legislature's function. *See* Tex. Const. art. II, § 1. They allege that the Department Statement is unconstitutionally vague and leaves the Doe Parents and Dr. Mooney as a mandatory reporter uncertain of how to act to avoid civil and criminal penalties. *See id.* art. I,

23

§ 19. They also contend that the Commissioner is depriving the Doe Parents of their right to make imminent decisions about Mary's medical care and to provide Mary with prescribed gender-affirming medical care. *See Parham v. J.R.*, 442 U.S. 584, 602 (1979) ("our constitutional system long ago rejected any notion that a child is 'the mere creature of the State'" and asserted that parents have duty to "recognize symptoms of illness and to seek and follow medical advice") (quoting *Pierce v. Society of Sisters*, 268 U.S. 510, 535 (1925)). Finally, Appellees allege that the Commissioner is violating Mary's guarantee of equal rights and equality under law. *See id.* art. I, §§ 3, 3a.

Based on our analysis for the APA rulemaking and ultra vires claims, we conclude that Appellees' pleadings and the evidence presented affirmatively showed that these constitutional issues are ripe for court review. The Department has applied the challenged rule against the Doe Parents and has suspended Jane from employment. Because the Department has implemented the challenged rule, Dr. Mooney is subject to the rule's reporting requirements and presented evidence that this will harm her business and could expose her to civil and criminal penalties. *See Patel*, 469 S.W.3d at 78. On this record, we conclude that Appellees demonstrated that their constitutional claims are ripe for court review. *See Patterson*, 971 S.W.2d at 442.[16]

---

[16] Although none of the parties have raised the issue, we conclude that Senate Bill 14 (SB 14), enacted in 2023 after this appeal was fully briefed, does not affect our jurisdiction over this case. *See State ex rel. Best v. Harper*, 562 S.W.3d 1, 7 (Tex. 2018) (explaining that courts must consider issues affecting jurisdiction sua sponte) (citing *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) (per curiam)). SB 14 included Subchapter X of Chapter 61 of the Texas Health and Safety Code, titled "Gender Transitioning and Gender Reassignment Procedures and Treatments for Certain Children," which became effective on September 1, 2023. *See generally* Tex. Health & Safety Code §§ 161.701–.706. Section 161.702(3) prohibits a physician or healthcare provider from knowingly "provid[ing], prescrib[ing], administer[ing], or dispens[ing] any of the following prescription drugs that induce transient or permanent infertility: (A) puberty suppression or blocking prescription drugs to stop or delay normal puberty; (B) supraphysiologic doses of testosterone to females; or (C) supraphysiologic doses of estrogen to males." *Id.* § 161.702(3). Appellees' allegation that the Department Statement is an invalid rule under the

Because we conclude that Appellees have demonstrated that their claims are ripe, we overrule the State Appellants' first issue.

### Issue 2: Standing

The State Appellants next contend that Appellees lack standing because (a) Dr. Mooney has not alleged an injury and (b) Appellees do not allege that the Governor injured them.[17] "A challenge to a party's standing is an attack on the party's ability under the United States and Texas Constitutions to assert a claim." *Texas Med. Res., LLP v. Molina Healthcare of Tex. Inc.*, 659 S.W.3d 424, 440 (Tex. 2023). "The constitutional requirements of standing are (1) a concrete, particularized, actual imminent injury; (2) that is traceable to the defendant's conduct; and (3) that would be redressed by a favorable decision." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "[A] plaintiff does not lack standing simply because some other legal principle may prevent it from prevailing on the merits; rather, a plaintiff lacks standing if its claim of injury is too slight for a court to afford redress." *Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 696 (Tex. 2021) (internal quotation marks omitted). "To evaluate standing, we construe the pleadings in the plaintiff's favor, but we also consider relevant evidence offered by the parties." *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018) (citing *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555; *Texas Ass'n of Bus.,* 852 S.W.2d at 446). "[W]here there are multiple plaintiffs in a case, who seek injunctive or declaratory relief (or both), who sue individually, and who all seek the same relief[,] . . . the court need not analyze the standing of more than one plaintiff—so long as that plaintiff has standing to pursue as much or more relief than any of the other plaintiffs." *Patel,*

---

APA that interferes with their constitutional rights is not resolved by SB 14 because gender-affirming medical care is legally provided outside of Texas. Consequently, the presented issues remain live and Appellees continue to have a legally cognizable interest in the outcome of the case.

[17] The State Appellants do not address standing on a claim-by-claim basis.

469 S.W.3d at 77–78 (citing *Heckman*, 369 S.W.3d at 152 n.64). "The reasoning is fairly simple: if one plaintiff prevails on the merits, the same prospective relief will issue regardless of the standing of the other plaintiffs." *Id.* (citations omitted).

*Dr. Mooney's Standing to Pursue APA Rulemaking Claims*

The State Appellants allege that Dr. Mooney does not have standing to sue because she does not identify an actual injury as she does not allege that any governmental agency has investigated her or threatened to revoke her license as a practicing psychologist. Because the State Appellants challenge only the "injury in fact" component of standing, Dr. Mooney is required to show only that she has suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Heckman*, 369 S.W.3d at 154 (internal quotation marks omitted) (citing *Lujan*, 504 U.S. at 560–61).

Relevant to this analysis, Appellees allege in their pleadings and presented evidence that the implementation or threatened application of the Department Statement as an invalid rule interferes with or threatens to interfere with Dr. Mooney's right to due process because the Department Statement is unconstitutionally vague and does not provide Dr. Mooney with notice of her mandatory reporting requirements. *See In re Abbott*, 645 S.W.3d at 285 (Lehrmann, J., concurring) (explaining that professionals with duty to report suspected child abuse are faced with dilemma of choosing between possibility of referral for prosecution for failing to report conduct now deemed abusive, along with impact on their professional licenses and livelihoods, and violating their professional and ethical obligations). In her sworn declaration submitted with the petition, Dr. Mooney attests that if she complies with the Department Statement and reports her clients solely because they sought gender-affirming medical care, she will violate the ethical principles of psychologists and the code of conduct of the American Psychological Association.

26

Dr. Mooney further attests that subjecting her clients to a Department investigation and possible family separation solely for receiving the healthcare they need would worsen their mental health and could worsen the already tragic rate of suicide among transgender youth.[18]

Dr. Mooney further attests that if she follows her ethical and professional duties and fails to report her clients who receive gender-affirming medical care, she could be subject to an investigation by the Texas Board of Examiners of Psychologists and lose her license, which would end her private practice and livelihood. She could also face criminal prosecution and civil penalties. *See* Tex. Fam. Code § 261.109 (providing criminal penalties for licensed professionals who knowingly fail to report suspected child abuse). Texas law requires Dr. Mooney to report suspected child abuse within forty-eight hours of her first suspicion. *See Scott & White Mem'l Hosp. v. Thompson*, 681 S.W.3d 758, 760–61 (Tex. 2023) (citing Tex. Fam. Code § 261.101(b)). Dr. Mooney can make the report of suspected child abuse to the Department or to a law-enforcement agency. Tex. Fam. Code § 261.103. The Department assesses "whether a report it receives is actually 'a report of child abuse or neglect.'" *In re Abbott*, 645 S.W.3d at 281 (citing Tex. Fam. Code § 261.301(a)).

Dr. Mooney also testified that complying with the allegedly invalid rule in the Department Statement would cause her to lose clients and revenue, as well as her goodwill and reputation. Dr. Mooney attests that she may be forced to close her practice if her clients learn that she will violate their trust and report them to the Department solely for receiving medical care. We have recognized that "a business can have standing to challenge the legality of government actions based on pleadings or proof that the actions impose regulatory burdens, damage or destroy

---

[18] In her sworn declaration, Dr. Mooney attests that that at least 44% of transgender youth attempt suicide during their lifetime as compared to the national average of about 4% for teens.

27

markets for its services, or impede business opportunities." *Texas Dep't of State Health Servs. v. Balquinta*, 429 S.W.3d 726, 741 (Tex. App.—Austin 2014, pet. dism'd). In addition, the Governor's Directive was forwarded to the agency with enforcement authority over Dr. Mooney's professional license. Dr. Mooney thus presented evidence of a concrete and particularized injury that is traceable to the Department's alleged rulemaking. *See Babbitt v. Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (explaining that plaintiff who challenges statute must demonstrate realistic danger of sustaining direct injury as a result of enforcement and does not have to await consummation of injury to establish standing). Dr. Mooney's injuries would be redressed by an injunction and judicial invalidation of the challenged rule to ensure that she can continue to practice in her profession and remain in compliance with her mandatory duty to report suspected child abuse without violating the law or her ethical obligations to her clients. *See Texas Bd. of Chiropractic Exam'rs v. Texas Med. Ass'n*, 616 S.W.3d 558, 567 (Tex. 2021). Viewing the pleadings liberally in favor of Appellees and the evidence in the light most favorable to them, we conclude that the trial court did not err when it determined that Dr. Mooney has standing to assert APA rulemaking claims against the Department and the Commissioner.

*Dr. Mooney's Standing to Assert Ultra Vires and Constitutional Claims Against the Commissioner and Department*

For standing purposes, Dr. Mooney's claim alleging that the Commissioner engaged in ultra vires conduct and her claims asserting constitutional violations against the Commissioner may be grouped into the same category as her APA rulemaking claims because they all arise from the same injury that Dr. Mooney incurred as a result of the allegedly improper rule announced and implemented in the Department Statement. *See Busbee v. County of Medina*, 681 S.W.3d 391, 396 (Tex. 2023) (instructing that claims arising from same alleged injury may be analyzed together for standing purposes); *McLane Champions, LLC v. Houston Baseball Partners,*

28

*LLC*, 671 S.W.3d 907, 913 n.4 (Tex. 2023) (same). While we express no opinion on the merits of the claims, Dr. Mooney alleged and presented evidence of a concrete injury in fact that is traceable to the Commissioner's and the Department's conduct. *See Busbee*, 681 S.W.3d at 396. Viewing the pleadings liberally in favor of Appellees and the evidence in the light most favorable to them, we conclude that the trial court did not err when it determined that Dr. Mooney has demonstrated her standing to assert the ultra vires and constitutional claims against the Commissioner.

*Appellees' Standing to Sue the Governor*

However, we agree with the Governor that Appellees lack standing to sue him because Appellees have not alleged an injury that is traceable to the Governor's conduct. *See Mosiac Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 250–51 (Tex. 2023) (instructing that to establish standing plaintiff must plead facts demonstrating that plaintiff suffered injury that is fairly traceable to defendant's conduct and is likely to be redressed by requested relief). The Doe Parents assert the same APA rulemaking, ultra vires, and constitutional claims as Dr. Mooney, and they pleaded additional constitutional claims. They first allege that the Governor and the Commissioner have violated their fundamental parental rights to care for their child by criminalizing the act of providing prescribed medical care that is accepted in the medical community and threatening family separation through the new rule announced in the Department Statement that adopted the Governor's Directive. The Doe Parents next assert that the Governor and the Commissioner have violated Mary's guarantee of equal rights and equality under law. *See* Tex. Const. art. I, §§ 3, 3a. For standing purposes, all the claims that Appellees assert against the Governor arise from the issuance of the Governor's Directive. *See Busbee*, 681 S.W.3d at 396.

The State Appellants argue that Appellees lack standing to sue the Governor because the Texas Supreme Court announced that "neither the Governor nor the Attorney General

29

has statutory authority to control [Department] investigatory decisions." *In re Abbott*, 645 S.W.3d at 281. The high court explained that it had been "directed to no source of law obligating [the Department] to base its investigatory decisions on the Governor's [Directive] or the Attorney General's opinion." *Id.* (explaining that Governor's Directive cites no legal authority that would empower Governor to bind Department); *see id.* at 284 (concluding that Governor's Directive was nonbinding). The Governor and Attorney General were free to share their legal and policy views, but the Department "was not compelled by law to follow them." *Id.* at 281. The Department, not the Governor or Attorney General, has been granted statutory authority to investigate and assess reports of child abuse or neglect, and the Department "alone bears legal responsibility for its decisions." *Id.* Notably, the Texas Supreme Court concluded that because the "Governor lacks the authority to investigate or prosecute the plaintiffs, and no party alleges that he has threatened to do so, an order prohibiting him from engaging in such conduct has no support" in the mandamus record. *Id.* at 283.

Appellees have not pleaded or presented evidence that the Governor has threatened to investigate or prosecute them. *See City of El Paso v. Tom Brown Ministries*, 505 S.W.3d 124, 147 (Tex. App.—El Paso 2016, no pet.) ("In order to establish standing and a justiciable controversy between the parties, there must be an 'actual enforcement connection—some enforcement power or act that can be enjoined—between the defendant official and the challenged statute.'") (quoting *Okpalobi v. Foster*, 244 F.3d 405, 419 (5th Cir. 2001) (en banc)). "[A] declaratory judgment requires a justiciable controversy as to the rights and status of parties actually before the court for adjudication, and the declaration sought must actually resolve the controversy." *Salazar*, 304 S.W.3d at 906 (quoting *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163–644 (Tex. 2004)). Appellees pleaded that the Governor's Directive was "entirely without Constitutional or

statutory authority" and faulted the Commissioner for implementing the Governor's "non-binding legal opinion that did not change Texas law." Appellees also alleged in their pleadings that the Governor "issued th[e] directive without citing gubernatorial authority," and noted that "the Governor has no authority to define the contours of what constitutes child abuse under Texas law or to unilaterally change any [Department] procedures." We hold that Appellees failed to establish that they have standing to pursue claims for declaratory and injunctive relief against the Governor. *See Texas Ass'n of Bus.*, 852 S.W.2d at 444 (instructing that opinion rendered in case brought by party without standing is advisory because it remedies hypothetical injury rather than actual harm). We sustain the State Appellants' second issue as it pertains to Appellees' claims against the Governor.

We also conclude that Appellees' pleadings and the record affirmatively negate the existence of subject-matter jurisdiction over the claims against the Governor in his official capacity such that is is impossible to amend the pleadings to invoke jurisdiction. *See Miranda*, 133 S.W.3d at 226–27 (explaining that if pleadings affirmatively negate existence of jurisdiction such that they may not possibly be amended to invoke jurisdiction, plea may be granted and suit dismissed without allowing plaintiff opportunity to amend). The trial court thus erred by denying the plea to the jurisdiction as to all claims asserted against the Governor. We reverse the part of the trial court's order denying the plea to the jurisdiction as to all claims against the Governor and render judgment dismissing all claims against the Governor. *See id; see also Rusk State Hosp. v. Black*, 392 S.W.3d 88, 96 (Tex. 2012); *Texas Parks & Wildlife Dept. v. Garland*, 313 S.W.3d 920, 926 (Tex. App.—Tyler 2010, no pet.) (concluding that when dispositive defect cannot be remedied dismissal with prejudice is proper). Because this issue is dispositive, we do not address the State Appellants' remaining issues as they pertain to the Governor. *See* Tex. R. App. P. 47.1.

31

Finally, because the State Appellants do not contest the Doe Parents' standing to assert claims against the Commissioner and the Department, and the Doe Parents seek the same declaratory and injunctive relief as Dr. Mooney, standing is established for all claims that the Doe Parents assert against those appellants. *See Patel*, 469 S.W.3d at 77–78 (explaining where there are multiple plaintiffs in case who seek same injunctive or declaratory relief, one plaintiff's demonstration of standing suffices). We overrule the issue as it applies to the claims against the Department and the Commissioner.

**Issue 3: Sovereign Immunity**

*APA Rulemaking Claims*

In their third issue, the State Appellants argue that Appellees' APA rulemaking claims are barred by sovereign immunity because the Department Statement was not a rule that implicated the APA's waiver of sovereign immunity. The State Appellants contend that the Department Statement was excluded from the APA's scope because it did not implement policy or have a binding effect on private parties.

Appellees sued the Department and Commissioner under Section 2001.038 of the APA, which waives sovereign immunity for a suit for declaratory judgment challenging the validity or applicability of a rule if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff. *See Texas Dep't of Transp. v. Sunset Transp. Inc.*, 357 S.W.3d 691, 700 (Tex. App.—Austin 2011, no pet.) (citing Tex. Gov't Code § 2001.038(a)). "Under the APA's definition, an agency statement does not have to be formally designated a 'rule' in order to meet the statutory definition and thus trigger the necessity for adoption by notice-and-comment rulemaking procedures." *Texas Comm'n on Env't Quality v. Friends of Dry Comal Creek,* 669 S.W.3d 506, 520 (Tex. App.—Austin 2023,

32

pet. denied). "'[T]he core concept' in distinguishing between an agency statement that concerns only 'internal management' and a 'rule' is whether the agency statement has a 'binding effect on private parties.'" *Texas Tel. Ass'n v. Public Util. Comm'n of Tex.*, 653 S.W.3d 227, 266 (Tex. App.—Austin 2022, no pet.) (quoting *Texas State Bd. of Pharmacy v. Witcher*, 447 S.W.3d 520, 529 (Tex. App.—Austin 2014, pet. denied)). Determining whether Appellees invoked the trial court's jurisdiction does not require us to delve into the merits of the claim. *See id.* (citing *Salazar*, 304 S.W.3d at 903). The issue here is whether the Department Statement constitutes a rule under the APA and, if so, whether its implementation or threatened application interferes with or impairs Appellees' legal rights or privileges. *See Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d 712, 720 (Tex. App.—Austin 2009, no pet.).

The APA defines a rule as follows:

"Rule"

(A) means a state agency statement of general applicability that:

(i) implements, interprets, or prescribes law or policy; or

(ii) describes the procedure or practice requirements of a state agency;

(B) includes the amendment or repeal of a prior rule; and

(C) does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures.

Tex. Gov't Code § 2001.003(6).

Appellees pleaded that the Department Statement is a "state agency statement" that conveys the Department's official position. *See id.* § 2001.003(6); *Teladoc, Inc. v. Texas Med. Bd.*, 453 S.W.3d 606, 614 (Tex. App.—Austin 2014, pet. denied). They also allege that the Department

33

Statement "implements, interprets, or prescribes law or policy" reflecting the Department's construction and application of Texas Family Code Section 261.301 and the new rule and enforcement policy of investigating gender-affirming medical care as presumptively abusive, in compliance with the Governor's Directive. *See* Tex. Gov't Code § 2001.003(6); *Teladoc,* 453 S.W.3d at 614. As such, the Department Statement was a statement of general applicability that affects the interests of the public at large and cannot be given effect without public input. *See Entertainment Publ'ns*, 292 S.W.3d at 721. Appellees further contend that the statement announced a departure from the Department's prior rule, under which there were no pending investigations of child abuse involving gender-affirming medical care. Appellees presented evidence demonstrating that the new rule was binding and generally applicable to all investigations involving gender-affirming medical care. *See* Tex. Gov't Code § 2001.003(6)(A).

Appellees specifically allege in their petition that the implementation or threatened application of the Department Statement as an invalid rule interferes with or threatens to interfere with the Doe Parents' fundamental right to provide Mary with prescribed medical treatment in consultation with her healthcare provider that is generally accepted in the medical community. *See Troxel v. Granville*, 530 U.S. 57, 65–66 (2000); *Miller ex rel. Miller v. HCA, Inc.*, 118 S.W.3d 758, 766 (Tex. 2003) (providing that Texas Legislature has recognized that parents are presumed appropriate decision-makers with right to consent to infant's medical care and surgical treatment). Appellees pleaded that, because of the Department Statement, the Doe Parents "cannot provide medically necessary and doctor-recommended medical treatment to their adolescent child without exposing themselves to criminal liability." They explain that Mary must choose between accessing prescribed medical treatment and exposing her parents to criminal liability and possibly being removed from her family, or abstaining from recommended medical care and suffering mental and

34

physical consequences to protect her family. Appellees presented evidence that Mary was prescribed gender-affirming medical care after consultation with medical professionals and that Mary's treatment was in accordance with what several doctors and the leading professional associations believe to be best medical practices. Because of the effect of the Department Statement on the Doe Family, Jane and John are considering out-of-state relocation. Appellees pleaded:

> Parents and families across the state of Texas are fearful that if they follow the recommendations of their medical providers to treat their adolescent children's suffering from gender dysphoria, they could face investigation, criminal prosecution, and the removal of their children from their custody. As a result, parents are scared to remain in Texas, to send their children to school or to the doctor, and to otherwise meet their basic survival needs. They are also scared that if they do not pursue this medically prescribed and necessary care for their children in order to avoid investigation and criminal prosecution, their children's mental and physical health will suffer dramatically.

Appellees also argue that the implementation or threatened application of the Department Statement as an invalid rule interferes with or threatens to interfere with Mary's rights to equality under law. *See* Tex. Const. art. I, § 3 (providing that all persons have equal rights); *id.* art. I, § 3a (providing that equality under law shall not be denied because of sex). Finally, Appellees contend that the implementation or threatened application of the Department Statement as an invalid rule interferes with or threatens to interfere with the Doe Parents' and Dr. Mooney's due-process rights to notice of what is prohibited. *See id.* art. I, § 19. They contend that the Doe Parents could be liable for neglect for failing to provide Mary with prescribed gender-affirming medical care to treat her diagnosed gender dysphoria. *See* Tex. Fam. Code § 261.001(4)(A)(ii)(b). However, if the Doe Parents provide the prescribed gender-affirming medical care to treat Mary's diagnosis and growth, development, and functioning, the Department Statement renders them

35

subject to investigation for child abuse. Likewise, pursuant to the Department Statement, mandatory reporters such as Dr. Mooney face civil and criminal penalties and loss of their professional license and livelihood if they fail to report clients who receive gender-affirming medical care. However, Dr. Mooney attests that she would violate her professional standards of ethics and inflict serious harm on her clients if she reports them to the Department solely because they sought gender-affirming medical care.

The Department does not contend that it complied with the APA's rulemaking procedures when it issued the Department Statement. *See* Tex Gov't Code §§ 2001.021–.041 (setting out procedures for state agencies to adopt rules); *see id.* § 2001.035 (instructing that rule is voidable unless state agency adopts it in substantial compliance with sections 2001.0225 through 2001.034). However, the Family Code requires the Department to follow rulemaking procedures when adopting standards regarding the investigation of suspected child abuse. *See*, *e.g.*, Tex. Fam. Code § 261.301(d) (providing that executive commissioner shall by rule assign priorities and prescribe investigative procedures); *id.* § 261.310(a) (requiring executive commissioner shall adopt by rule standards for persons who investigate suspected child abuse or neglect). "When an agency promulgates a rule without complying with the proper rule-making procedures, the rule is invalid." *El Paso Hosp. Dist. v. Texas Health & Hum. Servs. Comm'n*, 247 S.W.3d 709, 715 (Tex. 2008) (citing Tex. Gov't Code § 2001.035).

Appellees supported their APA rule challenge with evidence. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012) (stating that trial court's review of evidence in context of jurisdictional plea mirrors that of traditional summary-judgment review and that if fact issue exists, plea should be denied). Their evidence showed that before February 22, 2022, the Department had not promulgated a rule concerning the investigation of gender-affirming

36

medical care. The Department had not pursued any such investigations until after the Department Statement was issued. Jane testified that before the Department Statement was issued, the Department refused to investigate reports of gender-affirming medical care. Appellees presented evidence that after February 22, 2022, the Department had opened at least seven investigations into families based on reports that would not have been investigated before the statement. The evidence also demonstrated that the Department Statement required investigators to conduct these investigations using different procedures from all other investigations in the Department. Investigators were restricted on what they could document, and these cases could not be assigned "priority none" or resolved without a disposition. There is no evidence that the Department investigates the same medical care as child abuse when it is provided to cisgender children.

The State Appellants argue that the Department Statement merely directed Department "employees to apply the law as explained in the Attorney General's opinion when investigating potential child abuse." However, pronouncements by an agency "that advise third parties regarding applicable legal requirements" may constitute "rules" under the APA. *Sunset Transp.*, 357 S.W.3d at 703. The Attorney General's opinion expanded the definition of "child abuse" to include gender-affirming medical care prescribed to an adolescent for the treatment of gender dysphoria, which was a new interpretation of the law that the Department never used previously. Indeed, the Department Statement acknowledged that "[a]t this time, there are no pending investigations of child abuse involving the procedures described in" the Attorney General's opinion. Through the Department Statement, the Commissioner's stated intent to follow the Attorney General's opinion bound Department employees to investigate all reports of gender-affirming medical care as child abuse and placed the public on notice of the binding change in enforcement. *See Texas Alcoholic Beverage Comm'n v. Amusement & Music Operators of Tex.*,

37

997 S.W.2d 651, 658 (Tex. App.—Austin 1999, pet. dism'd w.o.j.) (concluding that agency's memoranda to law enforcement constituted "rule" because memoranda set out binding practice requirements, substantially changed previous enforcement policy, and agents enforced administrative sanctions on owners of gaming machines). The evidence supports the trial court's conclusion that the Department Statement changed the status quo for transgender children and their families, as well as licensed professionals throughout the state, by giving the Governor's Directive the effect of new law or agency rule despite no new legislation or regulation. The implementation of the Department Statement, redefining "child abuse" and mandating investigation into all reports of gender-affirming medical care, renders the statement a rule because it impacts personal rights. *See Sunset Transp.*, 357 S.W.3d at 703; *Entm't Publications, Inc.*, 292 S.W.3d at 721–22 (concluding Comptroller's statement constituted "rule" under APA because it applied to all persons similarly situated).

The State Appellants also argue that the Department Statement is excluded from the APA's definition of a rule because it concerns only the agency's "internal management or organization" and does not affect private rights or procedures. *See* Tex. Gov't Code § 2001.003(6)(C). The State Appellants also contend that the statement governs how the Department will interpret "child abuse" for its discretionary investigatory decisions, and it argues that investigations do not alter private rights. We disagree. Private rights are affected by an intrusive or unlawful government investigation into a private home, family life, and medical decisions. Although the Department is vested with statutory authority to investigate reports of child abuse, Texas law requires the Department to adopt rules governing its investigations through the rulemaking procedures under the APA. *See* Tex. Hum. Res. Code § 40.006(a). The Department does not have the authority to announce without following APA rulemaking procedures that the

38

provision of certain medical care—only when administered to transgender minors—constitutes child abuse. The Department also does not have the authority without following APA rulemaking procedures to mandate child abuse investigations into all reports that transgender adolescents are receiving medical care, without regard to medical necessity, and conduct those investigations differently than all other Department investigations. The parents of transgender children have a right to be free from an unlawful government investigation and the right to direct their children's medical care. Their children have a right to receive prescribed medical care to treat diagnosed gender dysphoria, and licensed professionals have a right to challenge unlawful agency action that damages or destroys business. *See Balquinta*, 429 S.W.3d at 741. Appellees have presented evidence that their private rights along with the private rights of all parents of transgender children, the transgender children themselves, and licensed professionals throughout the state are affected by the Department Statement and enforcement policy requiring every report that an adolescent is receiving gender-affirming medical care to be investigated for child abuse. *See Witcher*, 447 S.W.3d at 529 (explaining that core concept distinguishing agency statement that concerns internal management and rule is whether agency statement has binding effect on private parties).

In its order granting a temporary injunction, the trial court concluded that Appellees asserted valid rulemaking claims under the APA and demonstrated a probable right to relief. Viewing the pleadings and evidence under the applicable standard of review, we likewise conclude that the Department Statement is a "statement implementing, interpreting, or prescribing the agency's policy that affects private rights and has implications beyond the parties to the underlying proceedings." *Id.* Because the pleadings and evidence demonstrate that the Department Statement qualifies as a "rule" under the APA, sovereign immunity is waived for Appellees' APA rulemaking claims against the Commissioner and the Department. *See* Tex. Gov't Code § 2001.038.

39

*Ultra Vires Claims*

The State Appellants argue that Appellees' UDJA ultra vires claims against the Commissioner do not provide a waiver of sovereign immunity because Appellees do not challenge the validity of an ordinance and Appellees fail to allege ultra vires conduct.[19]

Sovereign immunity does not bar claims alleging that a government actor acted ultra vires, or without legal authority, in carrying out his or her duties. *Houston Belt & Terminal Ry.*, 487 S.W.3d at 157–58. "To fall within the ultra vires exception to governmental immunity, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Heinrich*, 284 S.W.3d at 371. "Thus, ultra vires suits do not attempt to exert control over the state—they attempt to reassert the control of the state." *Id.* A plaintiff must assert an ultra vires claim against the "allegedly responsible government actor in his official capacity." *Patel*, 469 S.W.3d at 76.

Appellees allege in their petition that the Commissioner acted ultra vires by implementing the Governor's unlawful redefinition of child abuse and directing the Department to investigate reports of minors receiving gender-affirming medical care. Appellees maintain that issuing the Department Statement was ultra vires of the Commissioner's statutory rulemaking authority and ignored the APA's rulemaking process. *See* Tex. Hum. Res. Code § 40.027(e) (permitting Commissioner to adopt rules and policies for operation of Department).

Instead of proceeding to the merits-overlapping analysis that a jurisdictional challenge to an ultra vires claim may sometimes require, we have recognized that in circumstances

---

[19] Because we conclude that Appellees lacked standing to sue the Governor, we do not analyze this issue as it pertains to the Governor. *See* Tex. R. App. P. 47.1.

where the jurisdictional analysis of an ultra vires claim would also have the effect of deciding the merits of an APA rulemaking claim under section 2001.038 "that is within the trial court's jurisdiction by virtue of that statute's waiver of immunity, a trial court does not err in deferring that overlapping determination until a later time." *Balquinta*, 429 S.W.3d at 751; *see also Salazar*, 304 S.W.3d at 903 (where plaintiffs asserted valid APA rulemaking challenge under Section 2001.038, court need not determine whether plaintiffs properly alleged ultra vires claims because trial court's subject-matter jurisdiction was established by APA rulemaking challenge). The trial court did not err in declining to dismiss Appellees' UDJA ultra vires claims against the Commissioner on this ground. *See Balquinta*, 429 S.W.3d at 751.

We overrule the State Appellants' third issue.

**State Appellants' Issues Challenging Temporary Injunction**

In their remaining four issues, the State Appellants challenge the trial court's order granting the temporary injunction. "A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). Its purpose is to preserve the status quo of the litigation's subject matter pending trial. *Id.*; *see In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (orig. proceeding) (explaining "status quo" is "last, actual, peaceable, non-contested status [that] preceded the pending controversy"). A party seeking an injunction must plead and prove three elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) "a probable, imminent, and irreparable injury in the interim." *Butnaru*, 84 S.W.3d at 204. "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Id.*

41

We review an order granting a temporary injunction for a clear abuse of discretion. *Henry v. Cox*, 520 S.W.3d 28, 33 (Tex. 2017). "We limit the scope of our review to the validity of the order, without reviewing or deciding the underlying merits, and will not disturb the order unless it is 'so arbitrary that it exceed[s] the bounds of reasonable discretion.'" *Id.* at 33–34 (quoting *Butnaru*, 84 S.W.3d at 204). The trial court does not abuse its discretion if some evidence reasonably supports its decision, even if the evidence is conflicting. *Id.* at 34; *Khaledi v. H.K. Glob. Trading, Ltd.*, 126 S.W.3d 273, 280 (Tex. App.—San Antonio 2003, no pet.). We view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor and "determine whether the order was so arbitrary as to exceed the bounds of reasonable discretion." *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 576 (Tex. App.—Austin 2000, no pet.); *see Butnaru*, 84 S.W.3d at 204 (instructing that appellate court may not substitute its judgment for that of trial court unless trial court's action was so arbitrary that it exceeded bounds of reasonable discretion).

*The Trial Court's Temporary Injunction*

In the order granting Appellees' temporary injunction, the trial court determined that Appellees "state a valid cause of action against each [State Appellant] and have a probable right to the declaratory and permanent injunctive relief they seek." The trial court concluded in the order that "there is a strong likelihood that [Appellees] will prevail after a trial on the merits because" "the improper rulemaking and implementation by [the Department and the Commissioner] are . . . void." The trial court further found in the order that the Governor's Directive and the Department Statement changed the status quo for families and professionals statewide because the Department did not investigate gender-affirming medical care as child abuse until after February 22, 2022. The trial court also found that the Commissioner's actions violated

42

separation of powers by impermissibly encroaching into the legislative domain because the Governor's Directive "was given the effect of a new law or new agency rule despite no new legislation, regulation, or even stated agency policy."

In the order, the trial court concluded that Appellees would suffer imminent and irreparable injury unless the State Appellants were enjoined from enforcing the Governor's Directive and the Department Statement. The trial court further found that (i) the Doe Family faces the deprivation of constitutional rights and the stigma attached to being the subject of a child-abuse investigation; (ii) if Jane is placed on the child-abuse registry, she would lose her job and means of caring for her family; (iii) Mary faces the potential loss of necessary medical care, which could cause severe and irreparable physical and emotional harm including depression and suicidality if treatment is discontinued; (iv) Dr. Mooney faces the potential loss of her professional license for failing to follow the code of ethics governing her profession and civil suits for failing to treat her patients in accordance with professional standards; and (v) Dr. Mooney risks criminal prosecution if she does not report her patients for receiving gender-affirming medical care, absent intervention by the court. The trial court granted the temporary injunction to maintain the status quo prior to February 22, 2022. The court ordered that until all issues in the lawsuit are fully determined, the State Appellants "are immediately enjoined and restrained from enforcing the Governor's Directive and [the Department Statement], both issued February 22, 2022, as well as the [Attorney General's opinion] which they reference and incorporate." With these provisions of the temporary injunction in mind, we turn to the State Appellants' issues four through eight, which challenge various provisions.

**Issue 4: First Provision of the Temporary Injunction**

The first provision of the temporary injunction enjoins the State Appellants from "taking any actions against Plaintiffs based on the Governor's Directive and [Department] rule, both issued February 22, 2022, as well as Attorney General Paxton's Opinion No. KP-0401 which they reference and incorporate." The State Appellants allege that this first provision is void because the Department has authority to investigate gender-affirming medical care as child abuse independent from the Governor's Directive. They also contend that the first provision is insufficiently specific to put the Department on notice of what exactly is prohibited.

We agree that under the injunction, "the Department has 'the same discretion to investigate reports of child abuse that it had before the issuance of [the Attorney General's opinion] and the Governor's [Directive].'" *In re Abbott*, 645 S.W.3d at 284. The State Appellants argue that if the temporary injunction does not stop the Department from exercising its preexisting statutory discretion to investigate the Doe Parents' alleged child abuse based solely on a report that Mary was receiving gender-affirming medical care, then the injunction does not remedy Appellees' injuries. We disagree. The injuries Appellees allege, and that the injunction redresses, are that the application or threatened application of the allegedly invalid rule announced in the Department Statement interferes with or impairs the Doe Parents' right to make imminent decisions about their child's medical care, Mary's guarantee of equal rights and equality under law, and Appellees' rights to due process because the rule is unconstitutionally vague. *See* Tex. Const. art. I, §§ 3, 3a, 19. Appellees challenge the validity and application of the Department Statement and actions of the Commissioner; their petition does not challenge the authority of the Department to investigate under procedures that existed before February 22, 2022.

44

The temporary injunction specifically precludes the Department from taking action against Appellees based on the rule announced in the Department Statement, which references the Governor's Directive and the Attorney General's opinion. *See In re Abbott*, 645 S.W.3d at 286 (Lehrmann, J., concurring) (explaining that injunction bars Department from initiating investigations and making referrals based solely on Governor's Directive). The temporary injunction remedies Appellees' injuries because it temporarily reinstates Department policies and procedures for screening reports and conducting investigations as they existed prior to February 22, 2022. *Id.* At that time, the Department would have applied the same policies and standards to a report concerning gender-affirming medical care as to any other case of suspected child abuse. *See id.* Before February 22, 2022, the Department had no rule that categorically deemed the provision of gender-affirming medical care presumptively abusive or required investigation and a disposition for every report of gender-affirming medical care without regard to medical necessity. Appellees presented evidence that, before February 22, 2022, the Department had no pending investigations involving reports of gender-affirming medical care and considered gender-affirming medical care "clearly not reportable."

Viewing the evidence in the light most favorable to the trial court's order and indulging every reasonable inference in its favor, we conclude that the first provision of the temporary injunction is not an abuse of discretion. *See Butnaru*, 84 S.W.3d at 204. We overrule the State Appellants' fourth issue.

**Issue 5: Second Provision of the Temporary Injunction**

The second provision of the temporary injunction enjoins the State Appellants from:

> (2) investigating reports in the State of Texas against any and all persons based solely on alleged child abuse by persons, providers or organizations in facilitating or providing gender-affirming care to

45

transgender minors where the only grounds for the purported abuse or neglect are either the facilitation or provision of gender-affirming medical treatment or the fact that the minors are transgender, gender transitioning, or receiving or being prescribed gender-affirming medical treatment.

The State Appellants argue that the second provision is invalid because Appellees are not entitled to a flat prohibition on Department investigations, and the Department is charged with deciding how to interpret "child abuse" in its investigations. But the plain language of the second provision of the temporary injunction does not operate as a "flat prohibition" on Department investigations. Instead, the temporary injunction prohibits the application of the new rule announced in the Department Statement that presumes the provision of gender-affirming medical care to be child abuse and treats the investigation of those cases differently than others. Thus, the "injunction prohibits [the Department] from investigating reports 'based *solely* on . . . facilitating or providing gender-affirming [medical] care . . . where the *only grounds* for the purported abuse' are 'facilitation or provision of gender-affirming medical treatment.'" *In re Abbott*, 645 S.W.3d at 286 (Lehrmann, J., concurring) (emphasis in original). The Department is "free to screen and investigate reports based on its preexisting policies regarding medical abuse and neglect." *Id.* The provision does not create new restrictions on the Department's statutory authority to investigate child abuse or neglect as that authority was understood before February 22, 2022. *Id.* It returned the Department to the status quo before the application of the Department Statement. *See Butnaru*, 84 S.W.3d at 204 (concluding temporary injunction's purpose is to preserve status quo).

Viewing the evidence under the appropriate standard of review and indulging every reasonable inference in the trial court's favor, we conclude that the trial court did not abuse its discretion by granting the second provision of the temporary injunction. *See id.* We overrule the State Appellants' fifth issue.

**Issue 6: Statewide Applicability of Second through Fourth Provisions of the Temporary Injunction**

The second through fourth provisions of the temporary injunction enjoin the State Appellants from:

> (2) investigating reports in the State of Texas against any and all persons based solely on alleged child abuse by persons, providers or organizations in facilitating or providing gender-affirming care to transgender minors where the only grounds for the purported abuse or neglect are either the facilitation or provision of gender-affirming medical treatment or the fact that the minors are transgender, gender transitioning, or receiving or being prescribed gender-affirming medical treatment;
>
> (3) prosecuting or referring for prosecution such reports; and
>
> (4) imposing reporting requirements on persons in the State of Texas who are aware of others who facilitate or provide gender-affirming care to transgender minors solely based on the fact that the minors are transgender, gender transitioning, or receiving or being prescribed gender-affirming medical treatment.

The State Appellants argue that the second, third, and fourth provisions are invalid because the trial court lacked power to afford statewide relief to non-parties. The State Appellants note that, in mandamus proceedings, the Texas Supreme Court directed us to vacate the corresponding portions of the temporary order issued on interlocutory appeal pursuant to Texas Rule of Appellate Procedure 29.3 because Rule 29.3 expressly "limits the scope of relief to that which is necessary to preserve the *parties'* rights" until disposition of the appeal. *In re Abbott*, 645 S.W.3d at 282 (emphasis in original). Texas Rule of Appellate Procedure 29.3 is not applicable to these proceedings.

Viewing the evidence in the light most favorable to the trial court's order and indulging every reasonable inference in its favor, the State Appellants have not shown that the second, third, and fourth provisions of the temporary injunction are so arbitrary as to exceed the

reasonable bounds of discretion. *See Thompson*, 24 S.W.3d at 576. First, statewide injunctive relief is appropriate because the Doe Family is proceeding in this case under pseudonyms, which the court permitted to protect their privacy interests. *See* Tex. R. Civ. P. 21c(a)(3); Tex. R. App. P. 9.9(a)(3), (b); *cf.* Tex. R. App. P. 9.8 (requiring identification of minors by aliases in parental-rights termination cases). Crafting a plaintiffs-only injunction that would permit relief without compromising the Doe Family's anonymity would likely not be possible. We are particularly mindful of Appellees' privacy interests because Mary is a minor. Second, if the trial court limited the injunction only to the Appellees, similarly situated non-plaintiffs would likely file subsequent lawsuits based on the order, which would create needless and repetitive litigation. Appellees have alleged and presented evidence that the Department Statement is generally applicable and impacts the fundamental constitutional rights of all persons similarly situated to the Doe Family and Dr. Mooney. They also presented evidence demonstrating that the Department has implemented the allegedly invalid rule declaring that the provision of gender-affirming medical care constitutes "child abuse" and is actively conducting investigations statewide based upon the rule.

Third, we have upheld statewide injunctions. In *Texas Health and Human Services Commission v. Advocates for Patient Access*, *Inc.,* the advocates challenged a Texas Health and Human Services Commission (HHSC) Medical Transportation Program rule as invalid under the APA, and the trial court signed a temporary-injunction order prohibiting HHSC from enforcing the rule pending a final disposition of the suit on the merits. *Texas Health & Hum. Servs. Comm'n v. Advocates for Patient Access, Inc.*, 399 S.W.3d 615, 618–620 (Tex. App.—Austin 2013, no pet.). We concluded that the trial court properly exercised discretion in issuing the following statewide temporary injunction prohibiting HHSC from:

> (a) Denying eligibility of a Medicaid recipient under the age of 18
> for medical transportation services because a parent or guardian

48

does not accompany the Medicaid recipient during the provision of such transportation services, provided that the Medicaid recipient's parent or guardian authorizes any other adult to accompany the child; or

(b) requiring as a condition for eligibility for reimbursement for any visit or screening provided under the early and periodic screening, diagnosis and treatment program of the Medicaid program that a child younger than fifteen years of age be accompanied by the child's parent or guardian if the child's parent or guardian has authorized any other adult to accompany the child to the visit or screening.

*Id.* at 620–21, 631. Similarly, in *Combs v. Entertainment Publications, Inc.*, the plaintiff sought a declaration that the Comptroller of Public Accounts for the State of Texas promulgated an invalid rule under the APA through a series of letters and also sought a temporary injunction prohibiting the Comptroller from implementing the invalid rule. *Entertainment Publ'ns*, 292 S.W.3d at 715, 719. We concluded that the trial court did not abuse its discretion in granting statewide injunctive relief that enjoined the Comptroller "from implementing and enforcing the New Rule described by the Comptroller's letters dated March 18, 2008 and April 14, 2008 unless and until the Comptroller properly enacts the New Rule" in compliance with APA procedures. *Id.* at 724–25. We explained that, because a temporary injunction serves the limited purpose of preserving "the status quo of the subject matter of a suit pending final disposition of the case on its merits," a trial court has broad discretion to issue an injunction. *Id.* (explaining that injunction was not "tax injunction" but enjoined enforcement of allegedly invalid rule under APA).

Guided by our past precedent and viewing the evidence in the light most favorable to the trial court's order, we conclude that the second through fourth provisions of the temporary injunctions were not an abuse of discretion. *See id*. We overrule the State Appellants' sixth issue.

**Issue 7: Scope of Third and Fourth Provisions of the Temporary Injunction**

The third and fourth provisions of the temporary injunction enjoin the State Appellants from:

> (3) prosecuting or referring for prosecution such reports; and
>
> (4) imposing reporting requirements on persons in the State of Texas who are aware of others who facilitate or provide gender-affirming care to transgender minors solely based on the fact that the minors are transgender, gender transitioning, or receiving or being prescribed gender-affirming medical treatment.

The State Appellants argue that the temporary injunction's third and fourth provisions are invalid because they enjoin actions that the Department does not have responsibility to take, namely "prosecuting or referring for prosecution" and "imposing reporting requirements."

Appellees' APA rulemaking claim alleges that the Department Statement required the Department to investigate all reports of gender-affirming medical care and imposed reporting requirements on licensed professionals under threat of criminal prosecution. The trial court concluded that the new rule implemented in the Department Statement changed the status quo for families and licensed professionals statewide on February 22, 2022. Licensed professionals such as Dr. Mooney can tender their mandatory report of suspected child abuse to the Department, and the Department assesses whether that report alleges child abuse or neglect. *See In re Abbott*, 645 S.W.3d at 281 (citing Tex. Fam. Code § 261.301(a)); *see also* Tex. Fam. Code § 261.103. As a result of the implementation of the Department Statement,

> professionals with the *duty to report* suspected child abuse are faced with the dilemma of choosing between the possibility of *referral for prosecution* for failing to report conduct that has now been deemed abusive—along with the associated impact that could have on their professional licenses and livelihoods—and violating their own professional and ethical obligations.

50

*In re Abbott*, 645 S.W.3d at 285 (Lehrmann, J., concurring) (emphasis added). In addition, Jane invoked her Fifth Amendment rights during the evidentiary hearing because counsel for the State Appellants would not "forecast" what actions the Department would take concerning the "report of child abuse."

The third and fourth provisions of the temporary injunction preclude the Department from prosecuting or referring for prosecution reports based solely on the criteria in the second provision, or imposing reporting requirements based on the delineated criteria. Viewing the evidence in the light most favorable to the trial court's order and indulging every reasonable inference in its favor, we conclude that the trial court did not abuse its discretion by granting the third and fourth provisions of the temporary injunction. *See Butnaru*, 84 S.W.3d at 204. We overrule the State Appellants' seventh issue.

**Issue 8: Irreparable Injury**

Finally, the State Appellants argue that Appellees have not shown irreparable harm because their injuries do not meet the constitutional minimum necessary for standing, and a temporary injunction that is later vacated will not remedy Appellees' harms. We conclude that the trial court did not err in denying the plea to the jurisdiction as to Appellees' claims against the Department and Commissioner. The State Appellants' speculation about a higher court's future ruling does not address the trial court's assessment of Appellees' injuries in the context of determining whether to grant temporary injunctive relief.

There is some evidence to support the trial court's finding that Jane risks losing her job and means of caring for her family if she is placed on the child-abuse registry; that Mary risks losing access to the medical care that her doctor prescribed, the discontinuance of which could cause suicidality and depression; Dr. Mooney faces the potential loss of her professional license

and livelihood if she is forced to report her clients in accordance with the Department Statement and potential criminal prosecution if she does not report her clients. Some evidence also supports the conclusion that application or the threatened application of the Department Statement interferes with the Doe Parents' and Dr. Mooney's rights to due process because the invalid rule is unconstitutionally vague and leaves them uncertain about how to act to avoid criminal and civil penalties. *See* Tex. Const. art. I, § 19; Tex. Fam. Code § 261.001(4)(A)(ii)(b), (1)(A)–(D). Likewise, some evidence supports the conclusion that the application or threatened application of the Department Statement interferes with the Doe Parents' right to make imminent decisions about Mary's medical care and Mary's rights to equal treatment and equality under law. *See Holick*, 685 S.W.2d at 20 (explaining "natural right existing between parents and their children is of constitutional dimensions").

Viewing the evidence in the light most favorable to the trial court's order and indulging every reasonable inference in its favor, we conclude that the trial court did not abuse its discretion by finding that Appellees would suffer imminent and irreparable injury unless the temporary injunction issued. *See Butnaru*, 84 S.W.3d at 211 (instructing that we cannot substitute our judgment for trial court's reasonable judgment even if we would have reached contrary conclusion). We overrule the State Appellants' eighth issue.

## CONCLUSION

We affirm the part of the trial court's order denying the plea to the jurisdiction as to all claims asserted against the Department and the Commissioner and affirm the part of the order granting a temporary injunction against the Department and the Commissioner. We reverse the part of the order denying the plea to the jurisdiction as to all claims asserted against the Governor and render judgment dismissing all claims against the Governor. Because we have dismissed the

claims against the Governor for lack of standing and the State Appellants no longer seek injunctive relief against the Governor, we vacate the part of the trial court's order granting a temporary injunction against the Governor. *Cf. Heckman*, 369 S.W.3d at 162 (concluding that when court determines it lacks jurisdiction because of mootness, it must vacate any order or judgment previously issued and dismiss case for want of jurisdiction).

_____

Edward Smith, Justice

Before Chief Justice Byrne, Justices Triana and Smith

Affirmed in Part, Reversed and Rendered in Part, Vacated in Part

Filed:   March 29, 2024